UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X Index No.:
YAN SONG,

Plaintiff,

**COMPLAINT**

-against-

Plaintiff Demands
a Trial By Jury

TIKTOK INC., individually, and BYTEDANCE INC., individually,

Defendants.
-----------------------------------------------------------------X

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, hereby complains of Defendants TIKTOK INC. ("TIKTOK") and BYTEDANCE INC. ("BYTEDANCE"), collectively "Defendants," upon information and belief, as follows:

## NATURE OF THE CASE

1. Defendants promote that their "mandate is to secure U.S. user data, apps and the algorithm through comprehensive data privacy and cybersecurity measures" and states that it "protects U.S. user data, software and infrastructure in a secure environment supported by independent oversight and verification."[1] However, when Plaintiff objected to Defendants' unlawful directive that she collect advertisers' personally identifiable information ("PII") and explained that she reasonably believed such conduct violated U.S. privacy and data protection laws, Defendants did not protect privacy, honor compliance, or welcome oversight. Instead, they demanded that Plaintiff pressure a vendor to abandon U.S. privacy protections in favor of China-based data practices, downgraded her performance review

[1] https://usdsjv.tiktok.com/

because she refused to collect the requested PII, and ultimately retaliated against and terminated her.

2. Plaintiff complains pursuant to the Family and Medical Leave Act ("FMLA"), the New York State Executive Law ("NYSHRL"), the Administrative Code of the City of New York ("NYCHRL"), the New York Labor Law § 740 ("NYLL 740"), based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1967) and 28 U.S.C. § 1367, seeking damages to redress the injuries she has suffered as a result of being discriminated against by Defendants on the basis of her sex/gender and pregnancy, together with creating a hostile work environment, retaliation, FMLA interference and retaliation, whistleblower retaliation, and unlawful termination.

## JURISDICTION AND VENUE

3. The Court has jurisdiction pursuant to 29 U.S.C. § 2601, et seq., 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction thereto pursuant to 28 U.S.C. § 1367.

4. This action involves a Question of Federal Law.

5. The Court also has jurisdiction pursuant to 28 U.S.C. §1332, in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

6. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of New York. 28 U.S.C. §1391(b).

7. On April 8, 2024, Plaintiff signed an arbitration clause. However, her claims are exempt from mandatory arbitration under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. § 402 ("EFAA"), which amended the FAA to render

arbitration agreements unenforceable, at the election of the person alleging the conduct, as to claims involving sexual harassment or discrimination on the basis of sex. We further contend the arbitration clause is independently deficient and unenforceable as written, for reasons Plaintiff reserves for motion practice should Defendants move to compel arbitration.

**PARTIES**

8. Plaintiff is a female resident of the State of New York, New York County.

9. At all times material, Defendant TIKTOK was and is a corporation duly incorporated under the laws of the State of California with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230.

10. At all times material, Defendant TIKTOK was and is authorized to conduct business in the State of New York and does conduct business in the State of New York.

11. At all times material, Defendant BYTEDANCE was and is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business at 250 Bryant Street, Mountain View, California 94041.

12. At all times material, Defendant BYTEDANCE was and is authorized to conduct business in the State of New York and does conduct business in the State of New York.

13. At all times material, Defendants were Plaintiff's joint employers, in that Defendant BYTEDANCE is the entity listed on Plaintiff's paystubs and employment agreements, but all Defendants were listed on Plaintiff's previous separation agreement, all Defendants had control over Plaintiff's employment, and Plaintiff performed work for all Defendants.

14. At all times material, Plaintiff was an employee of Defendants.

15. At all times material, Plaintiff was a qualified employee under the FMLA in that she worked at least 1,250 hours during the 12-month period immediately preceding her request for leave.

16. At all times material, Defendants were qualifying employers under the FMLA and employed at least 50 employees within 75 miles of Plaintiff's workplace.

## MATERIAL FACTS

17. On April 29, 2024, Plaintiff began working for Defendants as a Lead UX Researcher ("UXR") on the "Global Monetization Product and Technology User Research" team in the New York office.

18. In this role, Plaintiff led user research initiatives to analyze and understand Defendants' end users and advertisers, in order to guide product and design decisions.

19. In or around August 2024, Plaintiff's U.S.-based manager, Jingxi Li, hired manager, Sukhada Jog, to manage a team of UXR, including Plaintiff. Ms. Li then became Plaintiff's skip-level manager.

20. In or around October 2024, Ms. Jog's UXR team was reorganized into a China-based UXR team, which was led by Shun Wang. Mr. Wang then became Ms. Jog's manager and the skip-level manager of the entire UXR team, including Plaintiff.

21. Throughout her tenure at Defendants, Plaintiff received positive performance reviews under Ms. Li's and Ms. Jog's management.

22. For example, in her 2024 mid-year review, Plaintiff received an "M" rating for "Consistently Meets Expectations."

23. Specifically, Ms. Li wrote, "despite her short tenure, [Plaintiff] started to make significant contributions," Plaintiff "hit the ground running, quickly becoming an essential asset to the team," and the team "eagerly anticipates the continued creative impact that [Plaintiff] will undoubtedly bring."

24. Plaintiff had no disciplinary actions, write-ups, or warnings during this period.

25. Plaintiff's positive performance reviews continued for Q4 2024 and Q1 2025.

26. Around this time, Plaintiff was working on a project titled, "Advertiser Tracker," wherein Mr. Wang was her direct project supervisor.

27. The Advertiser Tracker was an extensive study aimed at collecting feedback from advertisers to improve Defendants' advertising products. Such collection was to be led by the third-party vendor, "Ipsos"[2] to compare advertisers' success across Defendants' competitors.

28. Advertisers who take part in a study typically go through a vetting process, after which Ipsos anonymizes their identities before sharing feedback with Defendants.

29. In or around Q2 2025, Mr. Wang directed Plaintiff to collect advertisers' personally identifiable information ("PII"), which included individual company badges, work email addresses, LinkedIn profiles, business cards, and screenshots of their ad campaigns on Google and Meta.

30. However, Plaintiff refused, informing Mr. Wang that she reasonably believed that collecting advertisers' PII would violate various laws, including the Federal Trade Commission ("FTC") Act, which enforces data privacy by penalizing companies who fail to protect consumer PII or violate their own privacy agreements, the California Consumer Privacy Act ("CCPA"), which protects user data from being sold, and the California Privacy Rights Act ("CPRA"), which strengthens CCPA by prohibiting data from being shared.

31. Plaintiff proposed instead that Ipsos, which had already vetted the advertisers, serve as the basis for confirming advertisers' identities. Mr. Wang dismissed this proposal and asked, "based on what proof should I trust the vendor?"

32. Plaintiff's refusal was consistent with what Ipsos had already bound itself to, in separate

[2] Ipsos is a leading global market research and consulting firm.

agreements with its user panel not to reveal PII to third parties. Furthermore, Ipsos subsequently confirmed to the Company that the PII collection measures Mr. Wang had proposed could not be implemented because, among other reasons, U.S. law governing personally identifiable information was "moderately strict, stricter than China."

33. In response, Mr. Wang demanded that Plaintiff "threaten the vendor by not hiring them in the future," "align my operation with those based in China," and that Plaintiff coerce Ipsos into violating and abandoning U.S. data privacy laws in favor of Chinese data practices.

34. In or around June 2025, Plaintiff and her teammates, Colleen Corkery (Lead UX Researcher), Ms. Jog, and Mr. Wang, all met in New York City for in-person meetings.

35. There, Plaintiff was visibly pregnant and thus, disclosed her pregnancy to her supervisors and colleagues.

36. Shortly after her disclosure, Plaintiff requested, and was approved for, FMLA leave as part of her maternity leave, which was set to begin on September 18, 2025.

37. In or around June 2025, Ms. Jog left Defendants, and China-based Yahong Yan transitioned to manage Plaintiff's team, and Mr. Wang maintained skip-level management.

38. Shortly after, Plaintiff met virtually with Ms. Yan and disclosed Plaintiff's upcoming scheduled maternity leave.

39. Defendants then began to retaliate against Plaintiff for blowing the whistle and for disclosing her pregnancy and planned maternity leave.

40. For example, in or around July 2025, despite her prior positive performance review, Plaintiff's mid-2025 performance rating dropped to a lower rating of "M-" (Meets Expectations). In her review, Ms. Yan wrote that Plaintiff had "failed to deliver the results asked of her," and cited, "delayed deliverables on external monitoring," references that

mapped directly onto Plaintiff's refusal to collect PII on the Advertiser Tracker.

41. Plaintiff's review further cited, "[Plaintiff's] project faced challenges and uncertainties…including the collision with and the adoption of the research methods that had been established in China," referring directly to Plaintiff's refusal to adopt China-based data collection practices.

42. Additionally, Defendants removed Plaintiff from significant strategic work, reassigned her to smaller and less visible projects, and deprived her of the type of assignments that were necessary to maintain her standing, visibility, and advancement opportunities within the Global Monetization Product and Technology User Research team.

43. For example, Plaintiff was put on more evaluative research assignments typically meant for junior researchers and removed from strategic user research projects that shape core business decisions and affect long-term company strategy.

44. Plaintiff did not complain at the time because her maternity leave was forthcoming and she did not want to "rock the boat."

45. On or about September 18, 2025, Plaintiff commenced her FMLA/maternity leave.

46. On October 10, 2025, Plaintiff gave birth.

47. On or about March 16, 2026, Plaintiff returned from maternity leave.

48. Upon Plaintiff's return from maternity leave, Defendants did not restore her to the same level of responsibility, visibility, or substantive work that she had performed prior to announcing her pregnancy and taking maternity leave.

49. Instead, Defendants continued sidelining Plaintiff by assigning her smaller projects and directing her to assist more junior researchers on larger projects, though she was a Lead UX Researcher and had previously performed more meaningful, substantive work for the team.

50. For example, prior to taking maternity leave, Plaintiff had led and owned a project called "Advertiser Tracker," which was an extensive study that collected feedback from Defendants' advertisers. While Plaintiff was on maternity leave, the Advertiser Tracker was given to a China-based colleague, Kate (last name withheld). When Plaintiff returned from maternity leave, she was assigned to assist Kate with peripheral tasks related to the project, such as user interviews and proofreading reports. Such tasks were generally undertaken by junior researchers, not senior researchers like Plaintiff.

51. Additionally, when projects for Q2 2026 were planned, Defendants continued to assign Plaintiff to junior tasks, such as evaluating new product designs, choosing positions and colors of buttons, font size, and word choices.

52. Defendants used these reduced work opportunities to manufacture a pretextual paper trail to justify Plaintiff's eventual termination.

53. Finally, on or about May 26, 2026, only approximately two months after Plaintiff returned from maternity leave, Defendants terminated Plaintiff's employment during a video call with skip manager, Jing Zhang, and Human Resources Representative, Randi He, claiming that her role had been eliminated as part of a "broader organizational adjustment."

54. However, Defendants' stated reason was pretext. After terminating Plaintiff, Defendants posted openings for UX Researcher positions on the same Global Monetization Product and Technology team.

55. Defendants' decision to terminate Plaintiff shortly after her return from maternity leave, while continuing to seek UX Researcher employees for the same team, supports an inference that Defendants terminated Plaintiff because of her sex, pregnancy, childbirth, and maternity leave.

56. Defendants further terminated Plaintiff because she refused to participate in conduct that she reasonably believed violated US consumer protection laws relating to PII.

57. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of salary, benefits, and other compensation which such employment entails.

58. As a result of Defendants' actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

59. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she has suffered and continues to suffer severe emotional distress and physical ailments.

60. As a result of the acts and conduct complained of herein, Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

61. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

## AS A FIRST CAUSE OF ACTION
## UNDER THE FMLA
## INTERFERENCE AND RETALIATION

62. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

63. § 2615 of the FMLA states as follows:

a. Interference with rights

> (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter.
> (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

64. Defendants interfered with Plaintiff's rights under the above section, when they removed Plaintiff from her responsibilities and assigned her lesser tasks, following her request for FMLA protected leave related to her pregnancy and childbirth. Furthermore, upon her return from maternity leave, Plaintiff was not restored to her prior higher level tasks commensurate with her experience, but to the same scaled-back, junior level assignments.

65. Defendants also retaliated against Plaintiff by terminating her employment just two months after her return from maternity leave to prevent any future need for pregnancy or childcare accommodations.

**AS A SECOND CAUSE OF ACTION**
**UNDER STATE LAW**
**DISCRIMINATION**

66. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

67. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:

> "(a) For an employer or licensing agency, because of an individual's … sex/gender… to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

68. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex/gender and pregnancy, together with creating a hostile work environment, retaliation, whistleblower retaliation, and unlawful termination.

69. Plaintiff hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A THIRD CAUSE OF ACTION**
**UNDER STATE LAW**
**RETALIATION**

70. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article."

72. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating against Plaintiff because she complained about Defendants' unlawful and discriminatory conduct.

73. Plaintiff hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A FOURTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**DISCRIMINATION**

74. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

75. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that:

> "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived … sex/gender … to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

76. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory

working conditions, and otherwise discriminating against Plaintiff on the basis of her sex/gender and pregnancy, together with creating a hostile work environment, retaliation, whistleblower retaliation, and unlawful termination.

**AS A FIFTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**RETALIATION**

77. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

79. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating against Plaintiff because she complained about Defendants' unlawful and discriminatory conduct.

**AS A SIXTH CAUSE OF ACTION**
**UNDER THE NEW YORK LABOR LAW**
**RETALIATION**

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81. New York Labor Law § 740 states, in pertinent part:

> 2. Prohibitions. An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following:
>
>     a) discloses, or threatens to disclose to a supervisor or to a

public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety;

b) …

c) objects to, or refuses to participate in any such activity, policy or practice.

82. Defendants violated this section hereto as set forth by terminating Plaintiff's employment after she refused to participate in practices that she reasonably believed constituted violations of law, rule, or regulation.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the NYSHRL, the NYCHRL, the NYLL § 740, by discriminating against Plaintiff on the basis of her sex/gender and pregnancy, together with creating a hostile work environment, retaliation, whistleblower retaliation, and unlawful termination;

B. Awarding damages to Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to their reputation;

D. Awarding Plaintiff liquidated damages;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff's attorneys' fees, costs, and expenses incurred in the prosecution of this action;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial, plus interest, punitive damages, liquidated damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: September 25, 2026
New York, NY

**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*

By: *<u>/s/ Jesse S. Weinstein</u>*
Jesse S. Weinstein, Esq.
45 Broadway, 28th Floor
New York, NY 10006
(212) 248-7431
jweinstein@tpglaws.com